IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| GAVRIEL GREEN, an individual, | Case No. 3:24-cv-01509-SB |
| Plaintiff, | **FINDINGS AND RECOMMENDATION** |
| v. | |
| VOLCANO HARLEY-DAVIDSON, a for-profit corporation; HARLEY-DAVIDSON FINANCIAL SERVICES, INC., a for-profit corporation, | |
| Defendants. | |

**BECKERMAN, U.S. Magistrate Judge.**

      Plaintiff Gavriel Green ("Green"), a self-represented litigant, filed this action against Volcano Harley-Davidson ("VHD"), a for-profit corporation with its principal place of business in Michigan, and Harley-Davidson Financial Services, Inc. ("HDFS"), a for-profit corporation with its principal place of business in Illinois (together, "Defendants"), alleging breach of contract, breach of the implied covenant of good faith and fair dealing, conversion, fraud, deceptive pricing practices, and various claims under the Uniform Commercial Code ("UCC"). Green filed an application to proceed in forma pauperis ("IFP"), which the Court granted. (ECF Nos. 1, 4.) The Court previously dismissed with leave to amend most of Green's original

PAGE 1 – FINDINGS AND RECOMMENDATION

complaint. *See* Findings & Recommendation ("F&R"), *Green v. Harley-Davidson et al.*, No. 3:24-cv-01509-SB (D. Or. filed Dec. 23, 2024) (ECF No. 5), *findings and recommendation adopted*, Order (D. Or. filed Jan. 23, 2025) (ECF No. 10). Green subsequently filed an amended complaint on February 12, 2025. (Am. Compl. ("FAC"), ECF No. 11.) For the reasons explained below, the Court recommends that the district judge dismiss in part Green's FAC.

## BACKGROUND

The Court more thoroughly discussed Green's factual allegations in its previous opinion and only summarizes the alleged facts here. (*See* F&R at 2-3.)

Green's claims arise from two applications he submitted to HDFS for a motorcycle loan. (FAC at 2.) Green applied to an HDFS subsidiary for the first motorcycle loan at the VHD dealership on June 2, 2023. (*Id.* ¶ 1.) Green signed the application "with a special [e]ndorsement," which the bank underwriter rejected. (*Id.* ¶¶ 2-3.) The following day, Green returned to VHD to complete a new application for the same motorcycle, which he signed "without prejudice, gavriel:green, beneficiary." (*Id.* ¶¶ 4-5.) VHD's Assistant Sales Manager, Karl W. ("Karl"), informed Green that HDFS would not accept the application because he used the phrase "without prejudice" next to his signature. (*Id.* ¶ 6.) Green informed Karl that he would not apply for a loan without including that phrase. (*Id.* ¶ 8.) A few minutes later, Karl informed Green that his loan was approved. (*Id.* ¶ 9.)

Green requested a paper contract for the loan, to which HDFS agreed on the condition that VHD hold the motorcycle until HDFS received the contract in the mail. (*Id.* ¶ 13.) When Green arrived at VHD the next day, a VHD business manager told him that HDFS needed more time, and that "[t]he bike will be paid off in one week, they'll remove the lien, and the bike is yours." (*Id.* ¶ 19.)

///

PAGE 2 – FINDINGS AND RECOMMENDATION

On June 9, 2023, another VHD representative informed Green that HDFS was refusing to pay VHD the funds from the loan without a new contract or an explanation for Green's use of the term "without prejudice." (*Id.* ¶ 21.) Ultimately, HDFS never paid VHD, and VHD refused to deliver the motorcycle to Green. (*See generally id.*) On July 11, 2023, VHD refunded Green's down payment. (*Id.* ¶ 41.)

## LEGAL STANDARDS

The IFP statute, codified at 28 U.S.C. § 1915 ("Section 1915"), provides, in relevant part, that a district "court shall dismiss [a plaintiff's IFP complaint] at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see also Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) (en banc) (noting that Section "1915(e) applies to all [IFP] complaints, not just those filed by [adults in custody]"). Section 1915(e) "authorizes '*sua sponte* dismissals of [IFP] cases[.]'" *Hebrard v. Nofziger*, 90 F.4th 1000, 1006-07 (9th Cir. 2024) (quoting *Jones v. Bock*, 549 U.S. 199, 214 (2007)).

A plaintiff's "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court has explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Although "[t]he plausibility standard is not akin to a 'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). Consequently, "where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line

PAGE 3 – FINDINGS AND RECOMMENDATION

between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Courts "have a duty to read a pro se complaint liberally," *Sernas v. Cantrell*, 857 F. App'x 400, 401 (9th Cir. 2021) (citation omitted), and "[self-represented] litigants should be treated with 'great leniency' when evaluating compliance with 'the technical rules of civil procedure.'" *Seals v. L.A. Unified Sch. Dist.*, 797 F. App'x 327, 327 (9th Cir. 2020) (quoting *Draper v. Coombs*, 792 F.2d 915, 924 (9th Cir. 1986)). As the Ninth Circuit has explained, there is a "good reason that [courts] afford leeway to [self-represented] parties, who appear without counsel and without the benefit of sophisticated representation: 'Presumably unskilled in the law, the [self-represented] litigant is far more prone to making errors in pleading than the person who benefits from the representation of counsel.'" *Huffman v. Lindgren*, 81 F.4th 1016, 1021 (9th Cir. 2023) (quoting *Lopez*, 203 F.3d at 1131).

There are, however, limits on the leeway that courts afford to self-represented litigants. For example, although courts "construe pro se pleadings liberally, . . . [courts] 'may not supply essential elements of the claim that were not . . . pled[.]'" *Owen v. City of Hemet*, No. 21-55240, 2022 WL 16945887, at *1 (9th Cir. Nov. 15, 2022) (first citing *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010); and then quoting *Litmon v. Harris*, 768 F.3d 1237, 1241 (9th Cir. 2014)); *Salazar v. Regents of Univ. of Cal.*, 812 F. App'x 410, 412-13 (9th Cir. 2020) (same).

## DISCUSSION

**I. SCREENING**

The Court has screened Green's FAC and concludes that Green has a reasonable opportunity to prevail on his breach of contract, breach of duty of good faith and fair dealing,[1]

---

[1] In his FAC, Green asserts a claim for "Lack of Full Disclosure, Breach of Good Faith." (*See* FAC at 19.) For the reasons discussed below, the Court recommends that the district judge

PAGE 4 – FINDINGS AND RECOMMENDATION

conversion, and fraud claims against VHD. Accordingly, the Court recommends that the district judge allow those claims to proceed.

## II.     BREACH OF CONTRACT

Green asserts a breach of contract claim against HDFS, alleging that it "agreed to purchase Plaintiff's contract/promissory note from VHD" and breached that contract when it "refused to fulfill [its] agreement to pay VHD." (FAC ¶¶ 85, 92.)

To prevail on a breach of contract claim, Green must establish four elements: "the existence of a contract, the relevant terms, plaintiff's full performance and lack of breach, and defendant's breach resulting in damages."[2] *Bonilla v. Credit One Bank, Nat'l Ass'n*, No. 3:24-cv-00837-AN, 2024 WL 3596959, at *2 (D. Or. July 30, 2024) (citing *Slover v. Or. State Bd. of Clinical Soc. Workers*, 927 P.2d 1098, 1101 (Or. Ct. App. 1996)); *see also Mooney v. Fife*, 118 F.4th 1081, 1099 (9th Cir. 2024) (stating that under Nevada law, "[t]o succeed on a breach of contract claim, a plaintiff must show four elements: (1) formation of a valid contract; (2) performance or excuse of performance by the plaintiff; (3) material breach by the defendant; and (4) damages" (quoting *Laguerre v. Nev. Sys. of Higher Educ.*, 837 F. Supp. 2d 1176, 1180 (D. Nev. 2011))).

Like his allegations in the original complaint, Green's allegations in his FAC relating to the existence of a valid contract with HDFS are conflicting. Green repeatedly acknowledges that

---

dismiss Green's "Lack of Full Disclosure" claim. Construing the FAC liberally, the Court interprets Green's allegations as asserting a separate claim against VHD for breach of the implied covenant of good faith and fair dealing. (*See id.* ¶ 208, "Even if VHD had the right to rescind the sale, their treatment toward Plaintiff was inexcusable—this persistent disregard for Plaintiff's rights and lack of respect and dignity toward him constitutes an egregious breach of the duty of good faith and fair dealing.")

[2] Green alleges that the relevant contract "is deemed to have been executed in Carson City, Nevada." (FAC ¶ 83.)

HDFS never accepted his loan application but appears to argue that he can still assert a breach of contract claim based on HDFS's allegedly improper basis for refusing to contract with him. (*See* FAC ¶ 98, "[HDFS] failed to provide any legal justification for rejecting [Green]'s reservation of rights on the credit application.") Whether or not HDFS's grounds for refusing to accept Green's loan application give rise to some other claim, Green cannot recover for breach of contract because the parties never agreed to form a contract. *See Bonilla*, 2024 WL 3596959, at *2 ("To state a claim for breach of contract, plaintiff must allege the existence of a contract[.]") (citation omitted); *Mooney*, 118 F.4th at 1099 ("To succeed on a breach of contract claim, a plaintiff must show . . . formation of a valid contract[.]") (citation omitted).

Further, as he did in his original complaint, Green alleges in his FAC that HDFS agreed to finance the motorcycle purchase based on a loan application that was materially different than Green's application because Karl fraudulently removed Green's "reservation of rights." (*See* FAC ¶¶ 116-22, alleging fraud based on Karl "knowingly omitt[ing] 'without prejudice' from [Green]'s loan application"). Green alleges that once HDFS discovered Karl's "deception," it "subsequently rejected [Green]'s contract because it included 'without prejudice.'" (*Id.* ¶ 121.) Green also alleges that if he was aware that his loan application did not include "without prejudice," he would not have entered into a contract with HDFS. (*Id.* ¶ 122.) The Court previously explained that these allegations are insufficient to support a breach of contract claim against HDFS. (*See* F&R at 7-8, finding that "no valid contract exists because there was no 'meeting of the minds' by which the parties agreed to terms").

Even if Green's allegations supported the existence of a contract with HDFS, Green appears to allege that the contract was induced by fraud and voided by HDFS. *See Or. Psychiatric Partners, LLP v. Henry*, 504 P.3d 1223, 1227 (Or. Ct. App. 2022) (describing

PAGE 6 – FINDINGS AND RECOMMENDATION

"voidable contracts" to include "contracts induced by fraud or resulting from mutual mistake"); *Bucca v. Allstate Indem. Ins.*, No. 2:14-cv-01903-APG-PAL, 2016 WL 4582051, at *5 (D. Nev. Sept. 1, 2016) ("If the execution of a contract is induced by fraud, the contract is voidable." (quoting *Anderson v. Reynolds*, 588 F. Supp. 814, 818 (D. Nev. 1984))).

In his FAC, Green also fails plausibly to allege that he fully performed and that HDFS breached the alleged agreement. Specifically, Green alleges that HDFS "agreed to purchase [Green]'s contract/promissory note from VHD." (FAC ¶ 85.) Green also appears to allege, however, that he requested that the parties use a paper contract, to which HDFS agreed on the condition that VHD maintain possession of the motorcycle until HDFS received the signed contract in the mail. (*See id.* ¶¶ 11-13, alleging that Green requested "to use a paper contract" to which HDFS agreed "on the condition that VHD hold Plaintiff's motorcycle until [HDFS] received the contract in the mail"; *id.* ¶ 89, "VHD agreed to hold Plaintiff's motorcycle over the weekend until [HDFS] received [Green]'s paper contract in the mail[.]") Green alleges that HDFS received his first loan application but "closed the account because they had not received a signed contract." (*Id.* ¶ 44.) Green emphasizes that HDFS "did not address [his second] application or contract signed June 3, 2023—the sole subject of his complaint" (*id.* ¶ 45), but Green fails to allege facts supporting that HDFS ever received a copy of that alleged agreement either. Thus, based on Green's allegations, it would appear that he failed to satisfy a condition precedent to HDFS's performance, which was delivering a signed copy of the agreement to HDFS. See *Bonilla*, 2024 WL 3596959, at *2 ("To state a claim for breach of contract, plaintiff must allege . . . plaintiff's full performance and lack of breach[.]" (citing *Slover*, 927 P.2d at 1101)); *Mooney*, 118 F.4th at 1099 ("To succeed on a breach of contract claim, a plaintiff must

PAGE 7 – FINDINGS AND RECOMMENDATION

show . . . performance or excuse of performance by the plaintiff[.]" (quoting *Laguerre*, 837 F. Supp. 2d at 1180)).

For the reasons stated, the Court finds that Green has failed adequately to plead a breach of contract claim against HDFS under Oregon and Nevada law. Accordingly, the district judge should dismiss Green's breach of contract claim against HDFS.

### III.   UNLAWFUL TRADE PRACTICES ACT

Green includes in his FAC two claims relating to VHD's product pricing and availability, which are titled "Deceptive Pricing Practices" and "Lack of Full Disclosure[.]" (FAC ¶¶ 166-211.) The Court previously interpreted these claims as arising under Oregon's Unlawful Trade Practices Act ("UTPA"), OR. REV. STAT. §§ 646.605 to 646.656. (*See* F&R at 14.) The Court dismissed these claims as untimely and instructed Green specifically to identify a federal or state statute under which he brings these claims and explain why these claims are not time barred. (*See id.* at 14-15.) In his FAC, Green again fails to identify a specific federal or state statute under which he brings these claims. Therefore, the Court interprets these claims as arising under the UTPA.

Under the UTPA, "a person who suffers an 'ascertainable loss of money or property' as a result of another person's violation of the UTPA may maintain a private action against that person." *Clark v. Eddie Bauer LLC*, 532 P.3d 880, 882 (Or. 2023) (quoting OR. REV. STAT. § 646.638(1)). "Actions brought under [the UTPA] must be commenced within one year after the discovery of the unlawful method, act or practice." OR. REV. STAT. § 646.638(6).

With respect to his "Lack of Full Disclosure" claim, Green does not include allegations addressing why that claim is timely. Accordingly, the Court recommends the district judge dismiss Green's count nine as untimely. (*See* F&R at 14-15, dismissing as untimely Green's UTPA claims because "Green alleges that the relevant events occurred in June 2023. . . . [and]

PAGE 8 – FINDINGS AND RECOMMENDATION

Green filed this action on September 9, 2024, more than a year after he discovered the alleged UTPA violations").[3]

Under his "Deceptive Pricing Practices" claim, Green appears to allege that his claims are timely because he did not learn of VHD's misconduct giving rise to that claim "until December 2023 while researching the official Harley-Davidson website in preparation for this Complaint." (*Id.* ¶ 170.)

"The UTPA statute of limitations begins to run when the plaintiff knows or should have known of the allegedly unlawful conduct." *Easterbrook v. LinkedIn Corp.*, No. 6:22-cv-01108-MC, 2023 WL 3022497, at *2 (D. Or. Apr. 20, 2023) (quoting *Morris v. Dental Care Today, P.C.*, 473 P.3d 1137, 1139 (Or. Ct. App. 2020)). "Oregon law provides a two-step analysis for determining whether a plaintiff should have known of the claims asserted: first, a plaintiff must have had sufficient knowledge to 'excite attention and put a party upon his guard or call for an inquiry'; second, if the 'plaintiff had such knowledge, it must also appear that a reasonably diligent inquiry would disclose the fraud.'" *Kambiz v. ReconTrust Co., N.A.*, No. 3:17-cv-00645-SI, 2017 WL 5615167, at *4 (D. Or. Nov. 21, 2017) (quoting *Nationstar Mortg. LLC v. Decker*, No. 3:13-cv-01793-PK, 2014 WL 3695490, at *7 (D. Or. July 24, 2014)), *aff'd*, 730 F. App'x 504 (9th Cir. 2018).

///

---

[3] To the extent Green asserts a claim against VHD based on comments that VHD employees made to him when he attempted to serve them with a notice of intent to sue in November 2023, the Court recommends that the district judge dismiss that claim because Green fails to identify any specific UTPA section, state statute, or federal statute under which he asserts that claim. *See Seib v. Metro. Life Ins. Co.*, No. 3:19-cv-00892, 2020 WL 2531119, at *11 (D. Or. Mar. 30, 2020) (dismissing the plaintiff's UTPA claim in part because "[the plaintiff] fail[ed] to identify which of the seventy-seven possible sections of O.R.S. § 646.608(1) [the defendant] allegedly violated"), *findings and recommendation adopted*, 2020 WL 2529615 (D. Or. May 15, 2020).

Green bases this claim on allegations that a VHD employee told him that VHD was charging the manufacturer's suggested retail price ("MSRP") for the motorcycle, but that he later discovered VHD charged more than the MSRP. (*See* FAC ¶¶ 167-180.) With respect to the first step, the Court finds that Green had sufficient knowledge to "excite [his] attention . . . or call for an inquiry[.]" *Kambiz,* 2017 WL 5615167, at *4 (citation omitted). Specifically, Green alleges that he was made aware in June 2023 that Karl allegedly misrepresented VHD's financing terms and capabilities, and fraudulently removed the term "without prejudice" from Green's loan application. (*See* FAC ¶¶ 119-21, 190-92.) Further, Green apparently began formally and informally complaining about the alleged conduct to VHD, HDFS, the Oregon Department of Justice, the Securities and Exchange Commission, and others in July 2023. (*See id.* ¶¶ 42-43.) The Court finds that these events sufficiently excited Green's attention to VHD's allegedly fraudulent conduct. *See Kambiz,* 2017 WL 5615167, at *5 (finding that the "[p]laintiffs' attention was excited to the possibility that Defendants' conduct was deceptive or fraudulent" because the "[p]laintiffs state that they began their research into [the relevant areas of] law within a few weeks of the [allegedly fraudulent conduct]" and stated that "they 'intuitively felt something was wrong'" since the conduct occurred).

With respect to the second step, the Court finds that a reasonably diligent inquiry would, and in fact did, disclose the alleged misrepresentation. Specifically, Green alleged that he found the relevant information "while researching the official Harley-Davidson website in preparation for this Complaint." (FAC ¶ 170.)

Having applied the relevant two-step analysis, the Court finds that Green's "Deceptive Pricing Practices" claim accrued in June 2023 and therefore the claim is untimely. *See Kambiz,* 2017 WL 5615167, at *5 (dismissing the self-represented plaintiffs' UTPA claims as untimely

PAGE 10 – FINDINGS AND RECOMMENDATION

because "Plaintiffs had access to all of the relevant documents . . . , and a reasonably diligent inquiry would have uncovered Defendants' allegedly fraudulent conduct within the applicable statutes of limitation"). Accordingly, the district judge should dismiss Green's counts eight and nine as untimely.[4]

## IV.     UCC

Green asserts four claims under the UCC, including: count four—coercion and violation of UCC § 1-308, count five—enforcement of lost instrument under UCC § 3-309; count six—Securities Theft; and count seven—unjust dishonor of negotiable instrument under UCC § 3-104. (*See* FAC ¶¶ 123-65.)

"The UCC is simply a model statute which many states, including Oregon have codified." *Ross v. Gee Dealer Servs.*, No. 3:19-cv-00391-AC, 2019 WL 2366040, at *2 (D. Or. Mar. 21, 2019) (simplified), *findings and recommendation adopted*, 2019 WL 2361039 (D. Or. June 4, 2019). "The Oregon Legislature adopted a modified version of the Uniform Commercial Code (UCC) and codified it in the Oregon Revised Statutes at Chapters 71 through 79." *Phillips Ranch, Inc. v. IBP, Inc.*, No. 3:01-cv-00598, 2002 WL 31432615, at *2 (D. Or. Jan. 7, 2002) (citing OR. REV. STAT. § 71.1010).

With respect to count four, Green alleges that HDFS coerced VHD into producing a new contract omitting Green's "reservation of rights" by withholding payment, and that VHD coerced

---

[4] The Court also finds that Green has failed adequately to plead that he suffered "ascertainable loss of money or property" as a result of the alleged pricing misrepresentations because he alleges that VHD reimbursed him for all of the money he paid for the motorcycle. (*See* FAC ¶ 198); *see also Clark*, 532 P.3d at 893 ("[I]ndividuals who were 'attracted by a forbidden misrepresentation but in fact did not act upon it, or who received immediate satisfaction at no expense when bringing the matter to the seller's attention,' will have been subjected to deception, but they will not have suffered injury as a result." (quoting *Weigel v. Ron Tonkin Chevrolet Co.*, 690 P.2d 488, 493 (Or. 1984))).

PAGE 11 – FINDINGS AND RECOMMENDATION

Green into "waiving all the rights he had expressly reserved" in violation of UCC § 1-308. (FAC ¶ 129-30.) This claim is nearly identical to a claim the Court previously dismissed. For reasons discussed in the Court's last opinion, the Court recommends that the district judge dismiss this claim. (*See* F&R at 20, dismissing Green's "UCC § 1-308 and Coercion" claim because "UCC § 1-308 does not provide a cause of action" and "Green's claim appears to be rooted in the sovereign citizen 'strawman' theory and fails adequately to allege facts to support a cognizable claim") (citations omitted).

With respect to count five, Green alleges that he executed a promissory note and that VHD sent it to HDFS, but the note was lost which Green claims allows him to enforce the note as a lost instrument under UCC § 3-309. (FAC ¶¶ 133-43.) This claim is nearly identical to a claim the Court previously dismissed. For reasons described in the Court's last opinion, the Court recommends that the district judge dismiss this claim. (*See* F&R at 20-21, "[T]his claim appears to be rooted in the sovereign citizen 'vapor money' theory and fails adequately to allege facts to support a cognizable claim.") (citation omitted).

With respect to count six, Green alleges that he "[e]ndorsed a Promissory Note for VHD to sell to [HDFS]" and that "[u]pon rejecting [Green]'s security, [HDFS] had a duty to return it to [Green]." (FAC ¶¶ 145, 150.) Green alleges that HDFS has failed to return that note or "rebut any points in [Green]'s affidavit, [meaning HDFS] has acquiesced to monetizing the note" and now "owes [Green] consideration equivalent to the full value of his security." (*Id.* ¶¶ 151-55.) Although it is a new claim, Green's count six appears to be based on the same sovereign citizen theories that the Court previously rejected. (*See* F&R at 20-21); *see also McLaughlin v. CitiMortgage*, 726 F. Supp. 2d 201, 212 (D. Conn. 2010) ("The essence of the 'vapor money' theory is that promissory notes (and similar instruments) are the equivalent of 'money' that

citizens literally 'create' with their signatures. . . . Then, according to the vapor money theory, the bank purports to lend the 'money' that was 'created' by the citizen's signature *back to the citizen borrower*.") (citations omitted). Accordingly, the district judge should dismiss this claim.

With respect to count seven, Green claims that he executed a promissory note that meets "the criteria for a negotiable instrument under UCC § 3-104" and that Green "lost his motorcycle as a result of [HDFS]'s unjust dishonor." (FAC ¶¶ 156-65.) This claim is nearly identical to a claim the Court previously dismissed. For the reasons discussed in the Court's previous opinion, the Court recommends the district judge dismiss this claim. (*See* F&R at 21, "Green's claim appears to be rooted in the sovereign citizen 'vapor money' theory and, for the reasons already discussed, fails adequately to allege facts to support a cognizable claim.").

For the reasons stated, the district judge should dismiss Green's UCC claims.

## V.     DISMISSAL WITH PREJUDICE

Green has now had two opportunities to plead his claims, has failed to follow the Court's instructions, and "points to no additional facts that [he] might allege to cure these deficiencies[.]" *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1072 (9th Cir. 2008), *as amended* (Aug. 26, 2008) (affirming dismissal with prejudice for failure adequately to plead a required element of the claim) (citation omitted). The Court previously instructed Green that many of his claims were untimely or based on frivolous theories, and cautioned Green that "courts have sanctioned parties for advancing similar claims and arguments." (F&R at 21-23.) Green continues to assert frivolous claims and rely primarily on allegations the Court previously found were insufficient to support a claim upon which relief can be granted. Accordingly, the Court recommends that the district judge dismiss all of Green's UCC claims, UTPA claims, and claims against HDFS with prejudice. *See Beverly v. County of Orange*, No. 22-55080, 2022 WL 14003695, at *1 (9th Cir. Oct. 24, 2022) (affirming dismissal of the plaintiff's Section 1983

PAGE 13 – FINDINGS AND RECOMMENDATION

claim with prejudice where "[t]he district court properly accounted for [the plaintiff]'s pro se status; it had already granted [the plaintiff] leave to amend her complaint and provided guidance to remedy the pleading's deficiencies, but [the plaintiff] failed to follow that advice") (simplified); *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 n.3 (9th Cir. 1987) (explaining that "a district court's discretion over amendments is especially broad where the court has already given a plaintiff one or more opportunities to amend [the plaintiff's] complaint") (simplified).

## CONCLUSION

For the reasons stated, the Court recommends that the district judge DISMISS IN PART Green's Amended Complaint (ECF No. 11), with prejudice and without leave to amend, but allow his breach of contract, breach of duty of good faith and fair dealing, conversion, and fraud claims against VHD to proceed.

## SCHEDULING ORDER

The Court will refer its Findings and Recommendation to a district judge. Objections, if any, are due within fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, the Findings and Recommendation will go under advisement on that date.

DATED this 12th day of March, 2025.

                                                                       _____
                                                                       HON. STACIE F. BECKERMAN
                                                                       United States Magistrate Judge