Gavriel
c/o 11918 SE Division St. #2189
Portland, Oregon [97266]
court.unbraided301@passinbox.com
512.277.3920

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| GAVRIEL GREEN | Case No. 3:24-cv-01509-SB |
| Plaintiff, | PLAINTIFF'S SUR-RESPONSE IN OPPOSITION TO DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT |
| v. | |
| VOLCANO HARLEY-DAVIDSON | |
| Defendant. | |

### **MEMORANDUM**

**I.      INTRODUCTION**

Pursuant to the Court's Order (ECF No. 29), Plaintiff submits this sur-response to Defendant's Reply in Support (ECF No. 24) of its Motion to Dismiss (ECF No. 22). Defendant does not meaningfully engage with the factual allegations in the FAC (No. 11) or the arguments presented in the Opposition (ECF No. 23) to the motion. Instead, Defendant misrepresents and fails to acknowledge material factual allegations, misconstrues the arguments, and prejudices the record with irrelevant facts and presumptions. The Reply also raises new arguments and issues that warrant a response before the Court can rule. As both the Motion and Reply fail to rebut the well-pleaded allegations or demonstrate that dismissal is warranted under Rule 12(b)(6), Defendant's motion should be denied.

Page 1 – PL'S SUR-RESP. IN OPP'N TO DEF.'S REPLY (ECF NO. 24) ISO MTD (ECF NO. 22)

**Plaintiff's Response to Defendant's Arguments in the Order They Appear in the Reply**

Defendant's Introduction

(Intro., p. 2) Defendant falsely asserts that Plaintiff's NOI to Sue demanded $10M and portrays Plaintiff's position as, "VHD not agreeing to pay him the ten million dollars he demanded, constitutes a 'tacit agreement to be sued for $10M.'" The reality is that the NOI merely required VHD make a good faith effort to make things right, and informed VHD that Plaintiff intends to sue for $10M otherwise.

Defendant mistakenly contends that "Green also argues that his demand letter creates liability because it is 'truth in commerce.'" Plaintiff's argument is that "an unrebutted **affidavit** stands as truth in commerce." (Maxim of law.) Regarding the NOI: The notice briefly outlined the claims based on facts that VHD *already* acquiesced to by failing to rebut the affidavit. Those claims easily warrant a $10M award, if not more. Despite receiving one last opportunity to make things right, VHD simply brushed Plaintiff off.[1] Because Plaintiff gave VHD legal notice but VHD did not refute those claims or challenge Plaintiff's intent to litigate for $10M, maxims of law like "silence is acquiescence," "he who does not deny, agrees," and the common law doctrine of 'estoppel by acquiescence' apply.

Whether the Court is required to enforce the Complaint's $10M demand for relief is a separate issue–and not one that needs to be decided on a Rule 12(b)(6) motion. What matters is that VHD had the opportunity to object or resolve things before it came to litigation but chose not to. As such, VHD is estopped from ridiculing that amount now or trying to use it as a stand-alone basis for dismissal.

Defendant makes the baseless assertion that "He admits… his finance application was rejected," despite the fact that (a) the FAC clearly alleges that the June 3 credit application was approved and (b) the Opposition (ECF No. 23) repeatedly rebuts that false and misleading statement.

---

1. Had VHD requested one more chance to rebut Plaintiff's affidavit, Plaintiff would have obliged–but VHD did not take the situation seriously enough to even ask.

Page 2 – PL'S SUR-RESP. IN OPP'N TO DEF.'S REPLY (ECF NO. 24) ISO MTD (ECF NO. 22)

Defendant cites ORS 72.3010, which requires the buyer to "pay in accordance with the contract." This citation does not work in Defendant's favor because–as clearly articulated in the Opposition–the contract only required Plaintiff to pay VHD $500. Plaintiff paid VHD *in accordance with the contract, thereby fulfilling his obligation as buyer.* (Opp'n, pp. 9 and 14.) Nevertheless, Defendant reiterates the motion's false assertion that "Green admits that he did not pay VHD."

While Defendant is entitled to dispute Plaintiff's factual allegations (if and when VHD answers the FAC), VHD is not permitted to assert that Plaintiff "admits" to things that (a) Plaintiff did not state, and (b) Plaintiff already pointed out as false in the Opposition. Defendant's repeated inclusion of knowingly false and misleading statements may warrant sanctions under Rule 11.

Then Defendant argues that the "fact that he never owned the motorcycle" is "fatal to his conversion claim." However, VHD intentionally took a photo of Plaintiff on the motorcycle for the express purpose of proving transfer of ownership. (See Ex. 6.) VHD can't deny its own documentation.

(Intro., p. 3.) Defendant then contends: "As he his short on any substantive arguments, Green relies heavily on the fact that the Court did not dismiss all of his claims during its screening process under 28 U.S.C. § 1915." However, (a) Defendant does not properly demonstrate that Plaintiff is "short on any substantive arguments," and (b) Plaintiff's references to the Court's prior decision were not blanket statements that Plaintiff's claims are immune from a motion to dismiss.[2]

Next, Defendant argues that Plaintiff's fraud claim fails to allege a misrepresentation, reliance, or damages, asserting that even if Karl would have submitted the application with "without prejudice," the "end result" would be "the same: the bank refusing to finance Green's purchase." But refusing to process a credit application (had Karl kept "without prejudice") is not the same as refusing to pay VHD after approving credit and receiving the signed contract. In any event, Defendant's argument misses the

---

2. These references appear on Opp'n, p. 3, point (e); Opp'n p. 5; and Opp'n p. 20 § E.

point: VHD induced Plaintiff into the transaction under false pretenses, causing avoidable aggravation, disappointment, and entanglement in the defendants' dispute all as a proximate result of that deception.

Defendant closes its introduction with: "Finally, Green does not adequately address that he is not even suing in his own name, but brings his claim as 'person GAVRIEL GREEN®, Plaintiff, by and through Gavriel Green, Pro Se.'1 This is straight from the sovereign citizen playbook, and this Court has already confirmed it will not entertain the frivolous legal theories that are the hallmark of that movement." This statement is irrelevant, hypocritical, and defamatory, for many reasons:

(a) The cited opening statement is not an argument or claim, therefore there is no legal theory for the Court to "entertain."

(b) Even if the Court were to disregard said "theory," it would have no effect on any of the claims.

(c) Defendant claims Plaintiff is not "suing in his own name," which necessarily acknowledges a distinction between GAVRIEL GREEN® and Gavriel Green (otherwise, who is "Green" suing "as"?). Yet Defendant immediately turns around and brands that very distinction as "sovereign citizen." Defendant cannot have it both ways–either there are two separate legal entities or not.

(d) GAVRIEL GREEN® is a sole proprietorship. IRS literature disagrees with Defendant's claim that Green's sole proprietorship is "straight from the sovereign citizen playbook."

(e) Gavriel owns the USPTO registered trademark "GAVRIEL GREEN" (serial no. 98069646). Eponymous brands routinely trademark a living individual's name. (See 15 U.S.C. § 1052(c).)

This, in addition to footnote 1's "sovereign citizen style gamesmanship" pejorative, serve no purpose other than to prejudice the record. Under Federal Rules of Evidence 401 (relevance) and 403 (exclusion for prejudice), Defendant is barred from including irrelevant arguments and defamatory language intended to categorically undermine Green's credibility.

Equally important, "sovereign citizen" is not a legal term and Defendant does not define it. The following definition from *Dred Scott v. Sandford*, 60 US 393 (U.S. Supreme Court 1857) becomes stipulated fact for this lawsuit unless rebutted with evidence:

> The words "people of the United States" and "citizens" are synonymous terms, and mean the same thing. They both describe the political body who, according to our republican institutions, form the sovereignty, and who hold the power and conduct the Government through their representatives. They are what we familiarly call the "sovereign people," and every citizen is one of this people, and a constituent member of this sovereignty.

As to footnote 1: It references footnote 5 of the Motion. Footnote 5 of the Motion raises the issue of *signatures* under Fed. R. Civ. P. 11(a), whereas the Reply raises a separate issue–"suing in his own name." In any event, the owner of a sole proprietorship may sign and/or sue on its behalf.

## II.     ARGUMENT

### A.     Explanation for Damages Suffered

In this section, Defendant emphasizes the FAC's demand for relief. Defendant argues that Plaintiff has a duty to provide a basis for calculating the damages award, implying an urgency to justify the sum demanded. However, at this stage, Plaintiff need only allege that (a) VHD had a duty, (b) VHD breached that duty, and (c) Plaintiff suffered as a result. The *amount* of damages is a question for Discovery, not a motion to dismiss. Also, Plaintiff already answered this question in the NOI, so Plaintiff does not understand what additional information VHD requires that it does not already have.

(p. 4) Defendant states: "The Court should dismiss all of Green's claims because he does not plausibly allege that he suffered any damages." However, the FAC clearly alleges the harm incurred as

a proximate result of each respective cause of action. (See FAC ¶¶ 82, 107, 112, 114, 115, 122, 197, 199, 201, 203, 208, 210, and 211.)[3]

Defendant states: "VHD was not required to respond to Green's threats to sue it for ten million dollars, and the fact that VHD did not agree to Green's outrageous demand does not somehow create recoverable damages for Green." This statement mischaracterizes the terms of the NOI. Plaintiff's demand–similar to many letters of intent–was that VHD make a good faith effort to make things right so that Plaintiff would not resort to suing. VHD is aware that Plaintiff did not make any "outrageous demands" (because VHD read the notice), and the Opposition does not suggest otherwise.

Defendant continues, "The Court should reject Green's argument that VHD acquiesced to being liable for millions of dollars by not responding to Green's specious accusations in a demand letter." First, Plaintiff did not say VHD acquiesced to being "liable" for millions–only that they acquiesced to being sued for that amount. Second, Plaintiff does not require Defendant's permission to sue for $10M to begin with, rendering the question of Defendant's acquiescence moot.

Defendant's footnote 2 responds to Plaintiff's noting that Defendant's Memorandum does not mention Plaintiff's $250,000 counteroffer. Plaintiff does not–as Defendant suggests–reference that offer to "prove liability, including damages." Rather, the point is that the motion repeatedly cites the sums Plaintiff demanded–from VHD, former Defendant HDFS, and even sums in another case–as a way to discredit Plaintiff. As such, Plaintiff simply found it notable that the motion makes an effort to showcase his irrelevant "astronomical sums," while omitting any mention of his $250,000 counteroffer.

Defendant erroneously characterizes Plaintiff's statement, "[e]ither Plaintiff suffered damages or not–the sum demanded... doesn't negate the underlying allegations as to damages incurred,"[4] as an

---

3. See also FAC ¶¶ 130, 132, 182-183. The claims per se were dismissed, but the behavior and cumulative effect cannot be ignored, contributing to the overall distress.

4. Opp'n, p. 3, point (d).

Page 6 – PL'S SUR-RESP. IN OPP'N TO DEF.'S REPLY (ECF NO. 24) ISO MTD (ECF NO. 22)

attempt to "excuse his failure to allege how much damages he suffered." As is clear from the context, Plaintiff's statement was an explicit rebuttal to the motion's footnote 1.

(p. 5) Defendant continues, "Green is not correct that he can simply throw out a random number and the Court needs to accept it." That statement mischaracterizes Plaintiff's argument:

(a) Plaintiff does not "throw out a random number," as the claims detailed in the NOI clearly validate the sum demanded.

(b) Plaintiff does not claim that "the Court needs to accept it"–on the contrary, Plaintiff acknowledges that, "Ultimately, the amount awarded is up to the jury." (Opp'n, p. 16, point (c).)

Defendant cites *N. Pac. Lumber Co. v. Moore*, 275 Or. 359, 366 (1976) to support its assertion that "a plaintiff has a duty to plead both the fact of damage and a reasonable basis for the Court to calculate the amount of damages." But the Court is not calculating damages at this time. The standard discussed in *Moore,* on the subject of whether the plaintiff provided sufficient evidence at trial to justify the final award, does not apply to a Rule 12(b)(6) motion.

Defendant argues that Plaintiff's desired award has "no connection to his efforts to purchase a motorcycle for less than $30,000." Defendant's narrow focus on the market value alone ignores several factors, like the high outstanding lien, Plaintiff's claim for punitive damages, the subjective nature of emotional damages–particularly an abusive experience of being coerced into waiving one's rights in exchange for a motorcycle–and that the sum demanded includes counts that were dismissed after the original Complaint was filed.

In the following paragraph, Defendant misrepresents the Opposition to mean Plaintiff believes his claims are immune to a motion dismiss, when it states: "Green argues that this Court has already found that he has 'sufficiently pled damages in the current four claims against VHD.' (Opp'n. p. 3.)"

Page 7 – PL'S SUR-RESP. IN OPP'N TO DEF.'S REPLY (ECF NO. 24) ISO MTD (ECF NO. 22)

This partial quote is taken out of context. Plaintiff actually wrote: "Defendant has not demonstrated that this Honorable Court erred in its conclusion that Plaintiff sufficiently pled damages in the current four claims against VHD." (Opp'n, p. 3, point (e).) The point is Defendant's failure to establish that Plaintiff's damage allegations are deficient; not to suggest the Court's findings under the IFP statute preclude those claims from a motion to dismiss.

Defendant rebuts its own mischaracterization of Plaintiff's argument and cites *Teahan*: "(stating that 'basic fairness weighs in favor of allowing Defendants to have their motion decided on the merits' and that '[a]t the time of the initial screening, the complaint was liberally construed without the benefit of briefing from Defendants.')." But misrepresenting Plaintiff's claims, putting words in his mouth, and littering the record with false statements hardly constitutes "basic fairness" or facilitates a decision "on the merits." And there is no "benefit of briefing" when Defendant's briefs do not convey the factual allegations, Plaintiff's claims or arguments.

### B.     Performance, Breach of Contract, Implied Covenant, and Conversion Claims

(p. 6) Defendant paraphrases ORS 72.3010 to mean that "(buyer has an obligation to pay the purchase price)." But–as Defendant correctly quoted in its introduction–the statute actually states that a buyer must "pay in accordance with the contract." Defendant relies on this misrepresentation to argue: "As a result, Green never owned the motorcycle, and Green's conversion claim fails..."

Defendant refuses to acknowledge that Plaintiff did, in fact, "pay in accordance with the contract," and that Plaintiff provided no less consideration than any other VHD customer who contracted with VHD through The Bank. Defendant cites ORS 72.3010 again, as if the statute somehow obligates Plaintiff to cover for The Bank's refusal to pay VHD, when compensating in the event of The Bank's breach was never part of the agreement. (continued, p. 7) Defendant repeats the argument it made in the motion–that the implied covenant "relates to the performance of the contract"–

Page 8 – PL'S SUR-RESP. IN OPP'N TO DEF.'S REPLY (ECF NO. 24) ISO MTD (ECF NO. 22)

even though Plaintiff already addressed this in both in the FAC (¶ 208) and the Opposition. (See Opp'n p. 5: "However, the contract still existed…")

Defendant cites the "balance due" on the bill of sale as evidence Plaintiff was required to pay VHD. That argument effectively frames VHD as a creditor extending a payment plan. Except, (a) that was not the agreement, and (b) if that were the case, VHD had a duty to request payment *before* taking adverse action. VHD made no such request. So, whether the agreement was that Plaintiff pay VHD directly or that The Bank make the payment on Plaintiff's behalf, VHD is still in breach of contract.

Then Defendant states: "Similarly, the promissory note that Green signed 'without prejudice,' showed that if the financing was approved (and it was not), the bank would direct the proceeds to VHD. (FAC Ex. 2, p. 2.)" This assertion is false and unsubstantiated:

(a) The FAC explicitly alleges the credit application was approved. (See FAC ¶ 9.)

(b) Defendant cites FAC Ex. 2, p. 2 (the contract) but fails to identify where the contract states that financing was pending, what specific conditions were allegedly unmet, or how The Bank could legally–or even logically–reject its own offer or contract.[5]

(c) Under Fed. R. Civ. P. 9(c) Plaintiff need only allege generally that all conditions precedent have been satisfied. If Defendant believes Plaintiff did not perform a condition precedent to The Bank honoring its contract, it must deny that with particularity.[6]

(d) Defendant does not define "financing,"[7] rendering VHD's position vague and ambiguous.

---

5. As explained in the Opposition, The Bank was the offerer; Plaintiff accepted. The contract was binding the moment Plaintiff irrevocably handed it to VHD and VHD irrevocably mailed it.
6. Fed. R. Civ. P. 9 (c), Conditions Precedent. "In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed. But when denying that a condition precedent has occurred or been performed, a party must do so with particularity."
7. Plaintiff defined "financing" in the Opposition and Defendant has not offered an alternative definition. Accordingly, the definition Plaintiff provided stands. See Opp'n, p. 10, point (a).

Page 9 – PL'S SUR-RESP. IN OPP'N TO DEF.'S REPLY (ECF NO. 24) ISO MTD (ECF NO. 22)

Defendant reiterates that "Green's finance application was rejected," despite (a) VHD's own employee having informed Plaintiff otherwise, and (b) the fact that The Bank would not have extended a contract offer without first approving the application. To support this logistically implausible position, Defendant cites The Bank's letter: "FAC Ex. 7 (stating that Green's 'loan agreement has not been received, thus the application has since been canceled')." It is unclear how "canceled" equates to "rejected," or why The Bank would keep a "rejected" application open in anticipation of a signed loan agreement. If anything, the cited language suggests that the application was *approved*.

Defendant then cites to ORS 646A.090, a statute that governs spot deliveries or "yo-yo" financing. As detailed in the Opposition, (a) VHD doesn't do spot deliveries and, (b) it makes no sense to suggest that The Bank would agree/refuse to purchase its own contract. Defendant fails to rebut those arguments, and continues to rely on this inapplicable statute nevertheless.

(p. 8) Defendant construes the Court's statement that "Ultimately, HDFS never paid VHD"[8] as the Court's "acknowledge[ment] that Green's financing was not approved." However, (a) that interpretation blatantly disregards the Court's earlier acknowledgement of FAC ¶ 9 (alleging that the loan was approved), and (b) the Court's finding reflects an acknowledgement that HDFS approved the loan but ultimately did not pay VHD–not that its failure to pay means the loan was never approved.

Defendant's conclusion that "There is no basis in law to find that VHD did anything remotely legally actionable by not giving Green a free motorcycle" ignores two critical facts: (a) VHD's business manager, Joe, expressly promised Plaintiff a free motorcycle with clear title, and (b) The Bank–not Plaintiff–is responsible for paying VHD. (See FAC ¶¶ 19, 81, 92, 97.) Defendant fails to provide any legal authority that permits VHD to retroactively deny any sale due to its own dispute with The Bank.

---

8. Doc. no. 12 p. 3.

### C.     Alleging a Valid Fraud Claim

(p. 8) Defendant asserts that Plaintiff's Response "makes no effort to identify any out of pocket or other damages he suffered as a result of any alleged fraud by VHD. The lack of damages is sufficient reason, on its own, for the Court to dismiss Green's fraud claim." However, FAC ¶ 122 clearly lists damages–and Defendant's own motion acknowledges some of them. (Mot. to Dismiss at 12: "He alleges he suffered a 'hard inquiry on his credit report' and 'stress' and 'aggravation' caused by a 'transaction that Plaintiff would not have entered into had full disclosure been made.' (FAC ¶ 122.)")

Defendant states: "Another reason his fraud claim fails is that many of Green's arguments in support of that claim relating to the loan application and loan contract are based on facts not pled in his First Amended Complaint. *See, e.g.*, (Opp'n. p. 20 (arguing about the difference between the 'application' and the 'contract')". This is mostly factually incorrect: FAC ¶ 86 explicitly differentiates the application and contract as distinct documents. The FAC clearly alleges that assistant sales manager Karl W. handled the credit application and that business manager Mike Brown handled the promissory note/contract. Defendant cannot plausibly argue that Karl and Mike are the same person or fulfill the same role. The only "new" detail in the Opposition is the physical location where the respective transactions are handled, which is both common knowledge and immaterial to Plaintiff's fraud claim.

As to Defendant's second example of "facts not pled in his First Amended Complaint" (i.e., that Mike informed Plaintiff that Karl removed "without prejudice" from the credit application): First, Plaintiff put that statement in brackets for that very reason. Second, the explanation of *how* Plaintiff discovered the omission is immaterial to both the allegation that it occurred and the arguments supporting the claim. The bracketed explanation may be disregarded without legal consequence.

Therefore, the claim that Plaintiff's "fraud claim fails" because the arguments are "based on facts not pled" in the FAC is unfounded.

Page 11 – PL'S SUR-RESP. IN OPP'N TO DEF.'S REPLY (ECF NO. 24) ISO MTD (ECF NO. 22)

(p. 9) Defendant continues: "Instead, Green simply alleges that he ultimately failed to secure financing because he would not sign a contract without the phrase 'without prejudice.' (FAC ¶ 121.)" The Opposition already addresses (a) Defendant's ambiguous use of "secure financing," and (b) that The Bank's refusal to pay VHD–despite approving the application and receiving the signed contract–constitutes a breach of contract, not a failure on Plaintiff's part.

Moreover, VHD is estopped from claiming that Plaintiff "failed to secure financing" when its own actions led to The Bank's refusal to perform.

Defendant continues: "This [failure to secure financing] would have been the same result if Karl would have submitted the application with the phrase 'without prejudice' on June 3, 2024, rather than removing it, as Green alleges." This logic is flawed for several reasons:

(a) An adverse action against a consumer at the application stage (Defendant's hypothetical scenario) is fundamentally different from The Bank's breach of its agreement to pay VHD after approving the credit application (what actually happened). These are adverse actions against different parties, at different stages of the sale, each carrying distinct legal consequences. Defendant's conflation of the timeline and parties involved strikes at the heart of this lawsuit.

(b) But for the fraud, The Bank would not have pulled credit or offered a contract. VHD would not have signed the bill of sale, facilitated the contracting process, or transferred ownership. There would have been no contract to breach, no implied covenant to violate and no property to convert–and no lawsuit.

(c) Plaintiff entered a transaction doomed to fail from the start. Plaintiff signed a contract thinking The Bank had approved financing *with* his reservation of rights. Karl's false representation led

to a false hard inquiry, wasted time and energy, emotional distress, false anticipation, and foreseeable dispute.

(d) The very act of intentionally inducing Plaintiff into a credit check and transaction–after he explicitly told Karl he would not apply without the phrase "without prejudice"–is harmful in and of itself. Plaintiff was robbed of the opportunity to walk away before credit was run,[9] deprived of his right to informed consent, and denied the opportunity to find a different bank or even consider paying cash for a different bike. In addition to the legal injury, the psychological and spiritual impact of being exploited, deceived, and disregarded must be acknowledged.

(next paragraph.) Defendant cites FAC Exhibit 7 to discredit the allegation that Karl omitted "without prejudice" from the June 3 application, stating: "The bank's letter does not acknowledge receiving any application on June 3, 2024, which contradicts Green's allegations that Karl sent one to it on that date. The Court should credit the exhibit that Green includes with this pleading." There are countless issues with both the letter itself and Defendant's argument based on this questionable letter:

(a) Earlier, Defendant cited this same letter to argue that "Green's finance application was rejected." (p. 7.) Defendant cannot cite the same exhibit to claim that The Bank rejected the June 3 application *and* that Karl did not submit one on that date. In any event, any apparent confusion about the dates does not undermine the fraud claim–it simply shifts the question to whether the fraud occurred on June 2nd or June 3rd.

(b) The document titled "Your Credit Score and the Price You Pay for Credit" confirms that The Bank received the June 3 application. (Ex. 2, p.1.) It indicates Eaglemark Savings Bank pulled credit from TransUnion on June 3, 2023–not June 2, as Defendants suggest.[10] The application

---

9. See Opp'n, p. 6, n. 5. (Stating that, had Karl been transparent, Plaintiff would have left.)

10. TransUnion credit reports reflect that ESB/HARLEY performed a hard inquiry on June 3, 2023, with no inquiries recorded on June 2, 2023. This is consistent with FAC ¶¶ 4, 9, 45, 68, 84, 122.

number (1011633157) listed on that document appears at the top of each page of the June 3 contract. (*Id.*). Any apparent contradiction lies within The Bank's own documents and records–not in Plaintiff's allegations.

(c) This letter was in response to Plaintiff's CFPB complaint about the June 3 transaction. The Bank's failure to acknowledge receiving the June 3 application does not contradict the allegation that Karl sent it. The Bank doesn't deny receiving the June 3 application–it simply dodges the issue.

(d) The Bank's failure to deny receiving the June 3 application supports the allegation that they *did* receive it. If The Bank had no record of a June 3 application, they would have explicitly said so, instead of skirting the issue.

(e) Instead of pointing fingers at Plaintiff, Defendant should be questioning the The Bank:

> (1) VHD told Plaintiff that The Bank's underwriter would not process the June 2 application. In that case, why do The Bank's records show they received and processed it? Why is The Bank suggesting that the June 2 application was approved but canceled due to not receiving a signed contract?

> (2) Why was The Bank expecting a signed contract from the June 2 application when it never issued a contract in relation to the June 2 application?

> (3) If the date on The Bank's letter was a clerical error, and The Bank is actually referring to the June 3 application and contract, then how does The Bank explain rejecting "without prejudice" on a contract it now claims it never received?

> (4) If The Bank received the June 3 contract–as evidenced by its issue with "without prejudice"–and had a valid legal basis for rejecting it, why not just cite that basis?

Page 14 – PL'S SUR-RESP. IN OPP'N TO DEF.'S REPLY (ECF NO. 24) ISO MTD (ECF NO. 22)

(f) It is patently clear from the FAC that Plaintiff submitted the Bank's letter to demonstrate its evasiveness, not to endorse this questionable response. (See FAC § G, "The Bank evades Plaintiff's inquiries about the contract" including FAC ¶ 45.)

Plaintiff agrees with Defendant's next statement: "The Court should credit the exhibit that Green includes with this pleading"–along with the other June 3 exhibits. Then Defendant repeats their argument that Karl's omission of "without prejudice" on the application didn't cause any harm because The Bank would have rejected it on the contract regardless. That's like saying "Martha's inducing Bob into marrying her under false pretenses didn't cause any harm because he annulled the marriage so the end result is the same: Bob is single." That reasoning fails to take into account the inherent harm in the experience of being deceived, and the needless turmoil caused by willful deceit.

Defendant concludes this section by asserting that "he fails to plead fraud with particularity." But this itself is vague–is it the "who," the "what," the "when," the "where," or the "how" that supposedly lacks specificity? All five are clearly alleged:

The "who" is Karl W., assistant sales manager at VHD. The "what" is, as Defendant previously stated, "Green argues that the 'fraud' was VHD employee 'Karl' submitting a credit application without the phrase 'without prejudice' while telling Green that he would include that phrase." The "when" was June 3, 2023 during the application process. The "where" was Volcano Harley-Davidson dealership in Gladstone, Oregon. The "how" was by intentionally omitting a material condition behind Plaintiff's back, thereby inducing him into a credit check and proceeding with a transaction he would not have entered into otherwise, and which would not have even gone to the next stage had Karl respected Plaintiff's express wishes.

This satisfies the particularity requirement under Rule 9(b), and Defendant's vague, unsupported claim to the contrary should be rejected.

Page 15 – PL'S SUR-RESP. IN OPP'N TO DEF.'S REPLY (ECF NO. 24) ISO MTD (ECF NO. 22)

**D.     Suing With a Registered Trademark**

Plaintiff does not understand Defendant's argument D., "Green Impermissibly Tries to Sue Under a Purported Registered Trademark Rather than Personally on His Own Behalf." The section appears to be a conglomeration of separate issues–e.g., trademark symbol, legal capacity to sue, party's name, Rule 11, and frivolous legal theories–with no clear articulation of what each issue is, how they relate to one another, or how it all forms "another reason why the Court should dismiss this case."

The section echoes the introduction's contradictory argument that Plaintiff is not suing on his own behalf while also undermining that very notion of split legal entities as a "sovereign citizen" argument that "should be rejected summarily." Defendant's position is not clear: is Plaintiff a "sovereign citizen" making baseless distinctions, or is Plaintiff not actually suing on his own behalf? Dismissal on either ground is unwarranted because:

(a) If Plaintiff is just a "sovereign citizen," then dismissal on the sole basis of "character traits wholly irrelevant to the claims at hand constitutes discrimination." (Opp'n p. 7.)

(b) If Defendant recognizes a legal distinction, that too is inconsequential, since the owner of a sole proprietorship may legally sign and sue on its behalf.

Defendant contends Plaintiff may be "a registered trademark, rather than a person," but does not explain how the ® symbol transforms "person GAVRIEL GREEN®" into intellectual property ("IP"). This also contradicts Defendant's own assertion that Plaintiff is "an apparent follower of the sovereign citizen movement," because IP can't follow movements. To be clear: *Plaintiff is an individual with the legal capacity to sue–not a registered trademark*. To the extent any genuine confusion existed as to the identity of the party, this statement constitutes ratification under Rule 17(a)(3).

Defendant concludes this section by tacking on, "*United States v. Benabe,* 654 F.3d 753, 767 (7th Cir. 2011) (sovereign citizen arguments should be rejected summarily)." But this citation has nothing to do with Fed. R. Civ. P. 11(a) or a registered trademark. *Benabe* is a criminal case in which a defendant challenged the court's jurisdiction by claiming sovereignty. To the extent Defendant cites *Benabe* in connection with the FAC's opening statement, that reliance is entirely misplaced. Plaintiff's statement is neither a challenge to the Court's jurisdiction nor an allegation or argument to be rejected.

Finally, the *Benabe* case states: "Our intention is not to quash the presentation of creative legal arguments or novel legal theories asserted in good faith. But the arguments raised by these defendants were not in good faith." Perhaps the same can be said of VHD's reliance on *Benabe*, as it serves only to divert attention from the four claims at hand and unnecessarily prejudices the record with the "sovereign citizen" slur.

### III. CONCLUSION

The First Amended Complaint states four claims upon which relief can be granted. Dismissal is not warranted under Rule 12(b)(6).

Dated this 13th Day of October, 2025.                              RESPECTFULLY SUBMITTED,

without prejudice,
/s/ gavriel
Gavriel Green